1 | ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

2 |

3 | MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

4 | JOSIAH BOURNES (CABN 272316)
Assistant United States Attorney

5 | 450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

6 | Telephone: (415) 436-7181
FAX: (415) 436-7234

7 | Josiah.bournes@usdoj.gov

8 | Attorneys for United States of America

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

11 | SAN FRANCISCO DIVISION

12 |
13 | UNITED STATES OF AMERICA,                )   CASE NO.  0971 3:23CR00096-001 CRB
                                             )
14 |        Plaintiff,                       )   UNITED STATES' SENTENCING
                                             )   MEMORANDUM
15 |   v.                                    )
                                             )   Hearing Date:  February 21, 2024
16 | JOSEPH JONES,                           )   Time:  10:00 a.m.
                                             )
17 |        Defendant.                       )
                                             )

18 |

19 | The government respectfully request that this Court sentence the defendant to a 12-month term to be followed by 3 years of supervision.

20 |

21 | **I.      INTRODUCTION: OFFENSE CONDUCT**

22 | This case involves incidents from two different occasions last year. The first incident occurred on January 1, 2023, at approximately 4:54 a.m. According to the police report (P.R.), U.S. Park Police Officer Peterson was patrolling in the area of 933 Mason Street when he observed a Tesla parked behind that area after business operating hours.[1] P.R. 5. Officer Peterson approached the Tesla, suspecting a camping violation, and observed condensation on

---

[1] All facts regarding this first incident are taken from United States Park Police Incident # PP23000092 unless otherwise noted.

UNITED STATES' SENTENCING MEMO                 1
 0971 3:23CR00096-001 CRB

the interior of the Tesla. PR. 5. Officer Peterson also observed an adult male, later identified as the Defendant Joseph Jones, sleeping in the back seat of the Tesla with a blanket over him. *See* Presentence Report ("PSR") ¶ 7. The Defendant was lying across the seats. *Id*. Officer Peterson called for backup and two additional officers arrived. PR. 5. Officer Peterson approached the left rear window to initiate contact with the Defendant. Officers also observed a bag of suspected marijuana in the center console of the vehicle in plain view, and, a large plastic bag of suspected marijuana on the rear passenger left floor. *Id*.

Officers asked the Defendant if all of the weed in the vehicle was his. The Defendant admitted ownership of the suspected marijuana by answering "yes." PR. The suspected marijuana in the back seat weighed approximately 448.7 grams. PSR ¶ 9. The marijuana in the center console weighed approximately 47.9 grams. *Id*. The Defendant told officers that there were no more drugs (other than the marijuana) in the vehicle. *Id*. The Defendant also told officers that there were no weapons in the car. *Id*.

While speaking with officers, the Defendant began digging around in the right rear floor area. The Defendant also began moving his blanket around. PR. 6. Officer Peterson also noticed that the Defendant seemed to be blocking the right rear portion of the vehicle from view. *Id*. Officers ordered the Defendant out of the car and he complied. *Id*. A records' check was performed and it revealed that the Defendant was on probation out of San Francisco with the primary offense being a violation of California Health and Safety Code § 11352, Sale or Transportation of a Controlled Substance. *Id*. The Defendant confirmed that he was on probation for selling weed but denied that he was selling the weed in the Tesla, and, indicated that he bought the marijuana in the Tesla in order to smoke it himself. *Id*.

Officers searched the Tesla. Officers located an open bag of psilocybin mushrooms (suspected Shrooms) weighing approximately 21.9 grams. PSR ¶ 9. Officers asked the Defendant about the shrooms and the Defendant stated he got the shrooms at the same time he obtained the marijuana but forgot he had them because he went to sleep after obtaining them. PR. 6. Officers also located a loaded Smith and Wesson magazine with 9 Win 9 mm luger bullets in the "driver's side rear pocket." PR. 6; *see also* PSR ¶ 9. Officers then searched the rear

passenger area where the Defendant was reaching and obstructing their view. PR 7. Officers picked up the blanket off of the rear right passenger seat that Defendant used to cover that area. *Id*. When Officers removed the blanket they immediately saw the grip of a semi-automatic firearm at the top of the front passenger rear pocket. *Id*. The firearm was a Smith and Wesson 9mm loaded with five bullets and one in chamber. PSR ¶ 9.

In a Mirandized statement the Defendant indicated that he believed the suspected marijuana recovered from the back seat was only hemp and had no THC in it because he smoked it but did not get high. PR 7-8. Defendant said the suspected psilocybin mushrooms were real and he was eating them earlier. *Id*. at 6. Defendant denied knowledge of the firearm but said it belonged to one of his friends, Manny or Mitchell whom he was smoking and eating mushrooms with earlier. PR. 8; *see also* PSR ¶ 10. Officers used a Nik presumptive test on the suspected marijuana from the back seat and it tested positive for THC. PR. 10. Officers did the same for the suspected shrooms and they tested positive for Psilocybin. *Id*.

The firearm in this case was swabbed for DNA in three different places (gun grip, gun slide, and, gun trigger), and, oral reference swabs were taken from the Defendant. *See* Forensic Biology Examination by A. Lee dated March 22, 2023 ("DNA Rpt"). The San Francisco Police Department Crime Laboratory performed DNA analysis and comparison and produced a report using the Starmix software system indicating a mixture of DNA in each swab tested and attributable to the reference sample, Joseph Jones, in the following percentages: 87% grip swab, 98% slide swab, and 94% trigger swab.[2] *Id*. at 2. For all three swabs, the report concluded that the proposition supported "inclusion" of the contributor/reference sample, and the support level was listed as "very strong support" (likelihood ratio for grip swab 2.14 octillion, slide swab 2.71 octillion, and grip swab 2.45 octillion). *Id.* at 1-2.[3]

---

[2] Although the report does name the reference sample/contributing individual as "Joseph Jones," it is the undersigned's understanding that the analysts confine their testimony at trial to their work, analysis, and, conclusions regarding whether the position was supported and at what level but do not specifically opine on whether any specific persons DNA was present on any item such as a firearm. This is a summary only of the report as I understand it.

[3] The supported proposition being the likelihood of obtaining the DNA results is at least (2.14, 2.71, and 2.45 respectively) "octillion times greater if the DNA originated from Joseph Jones and a random unrelated persons.

UNITED STATES' SENTENCING MEMO            3
0971 3:23CR00096-001 CRB

The second incident occurred on February 16, 2023 (PSR ¶ 11).[4] At approximately 7:41 a.m. San Francisco Police Department Officers (SFPD) were on uniformed patrol when they were approached by an anonymous passer that informed them that an individual, later identified as the Defendant, was sleeping in a Dodge Dart that was illegally parked in a red zone area (bus stop). *Id*. Officers approached the vehicle and saw the Defendant sleeping in a reclined driver's seat with a Glock style pistol clearly visible in his hand. *Id*. Officers retreated from the vehicle in order to formulate a tactical plan to approach given that the stop now involved a gun. *Id*. Before officers were able to create a plan, the Defendant woke up and began to drive away. *Id*. Officers returned to their vehicles and conducted a traffic stop about a block away from the original location. *Id*. Officers took the Defendant into custody without incident. *Id*. at 12. After securing the Defendant, Officers observed the firearm sitting on the driver's seat of the Dodge Dart. *Id*. The recovered firearm was a polymer 80 ghost gun without a serial number. *Id*. at 13. The firearm was a loaded pistol with six rounds in the magazine and one additional round in the chamber. All bullets were 9 mm Winchester rounds. *Id*. Officers also conducted a search incident to arrest and located two unfired bullets in Defendant's left pants pocket. *Id*. In Defendant's right pants pocket, officers located several orange pills, suspected Adderall and 9 white pills, suspected Xanax. *Id*.

According to the PSR, the Defendant a felony conviction from 2018 and four additional felony convictions from 2019 9 (counts 1 through 4). PSR 8-9. The Defendant received a suspended sentence for the 2019 convictions and he remains on probation for those offenses (sell/transport controlled substance and operate place for sale/gift/use of controlled substance). *Id*. at ¶ 31.

## II.     PROCEDURAL HISTORY

As a result of the two incidents, on April 3, 2023, the Defendant was charged in a two-count Indictment. Count one alleges a violation of 18 U.S.C. 922 (g)(1)-Felon in Possession of Firearm and Ammunition for the first incident, and, count two alleges a violation of 18 U.S.C. §

---

[4] All facts regarding the second incident are taken from SFPD report # 230114358 unless otherwise noted.

922(g)(1)-Felon in Possession of Ammunition for the second incident. On November 8, 2023, Defendant pled guilty to both counts 1 and 2. PSR ¶ 2. Judgment and Sentencing are currently scheduled for February 21, 2024, at 10:00 a.m.[5]

### III. SENTENCING GUIDELINES CALCULATION

The parties and Probation agree regarding the Defendant's offense level calculation. The Base Offense Level is 14 pursuant to U.S.S.G. § 2K2.1 (a)(6) because the Defendant was a person prohibited from possessing a firearm at the time of the offense due to a prior felony conviction. PSR ¶ 20. The Defendant is also entitled to a two-level decrease pursuant to U.S.S.G. § 3 E1.1 (a) as he has accepted responsibility for the offense. Therefore, his total offense level should be 12. PSR ¶ 28.

The government also agrees with probation and has no objection regarding probation's recommendation that the Court make a finding that the Defendant is in Criminal History Category II if the Court applies Amendment 821 effective November 1, 2023. (PSR ¶¶ 35-36 n. 1-2). Applying the Amendment 821 would reduce Defendant's Criminal History Category from III (15-21) to II (12-18).

### IV. SENTENCING RECOMMENDATION

#### a. Legal Standard

The Court should impose a sentence that is sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in § 3553(a). *Id.* at 991-93. As applicable here, these factors include:

1. The nature and circumstances of the offense and the history and characteristics of the Defendant;
2. the need for the sentence imposed to reflect the seriousness of the offense, to

---

[5] The copy of the PSR that the government received notes the time of sentencing to be 1:30 p.m. at ¶ 2. However, the undersigned checked Pacer and confirmed the 10:00 a.m. start time.

promote respect for the law, and to provide just punishment for the offense;

3. the need for the sentence imposed to afford adequate deterrence to criminal conduct;

4. the need for the sentence imposed to protect the public from further crimes of the Defendant; and

5. the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct.

**b. Recommended Sentence and Section 3553(a) Factors**

For the reasons set forth below, the government recommends that the Court sentence the Defendant to a 12-month term of imprisonment, to be followed by three years of supervised release. A sentence with these terms would be sufficient, but not greater than necessary, to meet the goals set forth in 18 U.S.C. § 3553.

The nature and circumstances of the charged offense and other relevant conduct, as well as the Defendant's troubling criminal history, counsel in favor of a significant sentence. Such a sentence is also necessary to promote respect for the law, afford adequate deterrence, and protect the public from further crimes of the Defendant.

The government's sentencing recommendation is made for the following reasons. First, the Defendant's conduct indicates a knowing violation of the law. In spite of his multiple prior felony convictions, the Defendant possessed a firearm and ammunition on January 1, 2023, and, was again in possession of ammunition a short period later on February 16, 2023. Although no one was injured in either incident, the potential danger posed by the Defendant as a prohibited person is self-evident. During both incidents, Defendant was sleeping in a car with suspected controlled substances present, and, with a firearm and ammunition within reach. During the January 1, 2023, incident, the Defendant admitted to smoking marijuana, and, eating shrooms prior to the arrival of officers. Defendant compromised his own safety as well as that of the attending officers when he had an unsecured loaded firearm within arms-reach in the back seat on January 1, 2023.

Second, the government's sentencing recommendation is warranted given the

Defendant's continued violation of release terms via substance use. According to the PSR, the Defendant submitted three drug tests that were positive for marijuana. PSR ¶ 5. This appears to be an ongoing issue. On February 13, 2024, the Pretrial Services Agency submitted a Memorandum ("PSM") requesting that a bail review hearing be calendared prior to the February 21, 2024 sentencing (Document 26). PSM 2. A bail review is now set for February 16, 2024.  In addition to several positive tests, the Defendant also has a warrant out for his arrest due to violating his probation out of Reno, Nevada. *Id*. Defendant's continued drug use (including marijuana) appears to be related to his criminality. Defendant has a history of using marijuana and other drugs (including Xanax, Adderall, and, psychedelic mushrooms). PSR ¶ 54. He began smoking marijuana at age 12. *Id*. Defendant reported that marijuana is his "drug of choice" and reported daily use. *Id*. at 55.  The Defendant's first convictions from 2016 appear to involve possession of marijuana in Nevada. *Id*. at ¶ 31. In addition, the Defendant's 2018 conviction out of Nevada also appears to have involved Defendant selling and/or possessing marijuana, psilocybin mushrooms, LSD, MDMA, and cocaine. *Id*. at ¶ 33. Defendant is on probation for his Nevada felony until April of 2024. *Id*. Defendant's pending driving under the influence and possession of a controlled substance charges in San Mateo county also appears to involve Defendant using and/or possessing marijuana, Adderral, Xanax, and, Cocaine. *Id*. at ¶ 38. Finally, suspected marijuana and psilocybin mushrooms were present in the car with the Defendant during the first incident that the Defendant is before the Court for on January 1, 2023, and, suspected Xanax and Adderall were present on Defendant's person on February 16, 2023 for the second that Defendant is before the Court on. Defendant has been out on release since June 1, 2023, but has not stopped using marijuana. *Id*. at 4-5.

This does not appear to be a minor substance abuse issue. By the Defendant's own admission, substance abuse has negatively affected his life. PSR ¶ 56. Furthermore, Pretrial Services has previously warned the Defendant to "stop all marijuana use immediately." *Id*. at 5. However, it appears that the Defendant has represented that he "has not been using marijuana while under supervision" while apparently continuing to test positive with confirmed positive tests on October 20, 2023, December 1, 2023, January 16, 2024, and a "presumptive positive

test for marijuana on February 2, 2024". PSM 2. The continued positive tests appear to indicate a number of troubling things to the government that impact its sentencing recommendation: (1) the Defendant is not taking his release conditions seriously and is blatantly ignoring instructions from pretrial services to cease smoking marijuana; (2) the Defendant is continuing to engage in conduct which appears to be directly related to the offenses that he is before the Court for--as Defendant admitted to smoking marijuana on January 1, 2023, and being involved with friends that encouraged drug use as an explanation for the offenses; (3) the Defendant appears unwilling to comply with Court orders (the prior offenses, the commission of the crimes in this case while on probation, and, the positive tests lead the government to this conclusion), and, (4) the likelihood that the Defendant reoffends, and the potential danger to the community are high given the Defendant's pattern of involving the use of controlled substances and criminal activity.

In addition, the Defendant now has a "nationwide extradition no bail warrant" issued on February 6, 202, in connection with his probation case out of Nevada. PSM 2.

Third, the government's sentencing recommendation itself is reasonable given the guidelines. Assuming that the Court follows probation's recommended finding, the Defendant's guideline range will be 12 months to 18 months. PSR ¶ 36 n. 2. The average sentence length of similarly situated Defendants is 11 months, and, the median length is 12. PSR ¶ 81.

Here, the Defendant's conduct is troubling, and, resulted in the Defendant having ammunition with him on two different occasions last year within a short period of time. Although the Defendant attributes his conduct to the company he kept in 2023, during both incidents, the Defendant was alone in a car at the time of police contact. Furthermore, Defendant's substance abuse, and the impact it has on his life, appears to have predated 2023 by many years. The fact that Defendant has continued to smoke marijuana while on release is an aggravating factor and a guidelines sentence is appropriate. However, the PSR does note multiple mitigating factors. First, the Defendant was placed in foster care system as a child and the Defendant indicated that he was not provided with effective supervision. PSR ¶ 42-43. Second, the Defendants mother also struggled with substance abuses, and, Defendant indicated

that he did not have contact with his father for a number of years (PSR ¶ 44). Third, the Defendant appears to have gainful employment at 711. (PSR ¶ 58).

Taking all of this into account, including the mitigating factors, the government recommends a sentence at the low end of the guidelines of 12 months. The Defendant appears to have previously served approximately 58 days previously from April 5, 2023 to June 1, 2023. (PSR.¶ 4).

For the reasons set forth above, the Court should sentence the Defendant to a 12-month term of imprisonment, to be followed by a three-year term of supervised release subject to the standard terms and special conditions proposed by Probation.

DATED:  February 14, 2024　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　ISMAIL J. RAMSEY
　　　　　　　　　　　　　　　　　　　　　　United States Attorney


　　　　　　　　　　　　　　　　　　　　　　*/s/ Josiah Bournes*_____
　　　　　　　　　　　　　　　　　　　　　　JOSIAH BOURNES
　　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney